# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MARINA PEÑA-NEVARRO**                    **CIVIL ACTION NO.**

**VERSUS**                                                  **22-143-BAJ-EWD**

**JULIE NGUYEN, ET AL.**

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, August 28, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MARINA PEÑA-NEVARRO**                                    **CIVIL ACTION NO.**

**VERSUS**                                                             **22-143-BAJ-EWD**

**JULIE NGUYEN, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand ("Motion"), filed by Plaintiff Marina Peña-Nevarro ("Plaintiff").[1] Julie Nguyen ("Nguyen") and MemberSelect Insurance Company ("MemberSelect") (collectively, "Defendants") oppose the Motion.[2] Because Defendants have not established the requisite amount in controversy, it is recommended[3] that the Motion be granted, and that this matter be remanded to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[4]

## I.    BACKGROUND

This is a civil action involving claims for damages by Plaintiff based on the injuries she allegedly sustained on November 21, 2020 due to a motor vehicle accident that occurred in East Baton Rouge Parish, Louisiana (the "Accident").[5] According to Plaintiff, the Accident was caused when she and Nguyen each attempted to turn onto a street from opposite directions, and Nguyen "failed to slow, stop, or yield…[and] suddenly and without warning…violently crashed into the front passenger side of [P]laintiff's vehicle."[6] On March 23, 2021, Plaintiff filed her Petition for

---

[1] R. Doc. 32.
[2] R. Doc. 33.
[3] *See, e.g.*, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.").
[4] Because remand is recommended based on Defendants' failure to adequately establish amount in controversy, Plaintiff's argument that removal was untimely is not reached.
[5] *See* R. Doc. 1-1, pp. 3-7 (Plaintiff's Petition).
[6] *Id*. at p. 4, ¶¶ 3-5.

Damages ("Petition") in Baton Rouge City Court ("City Court") against Nguyen and Nguyen's insurer, MemberSelect. In the Petition, Plaintiff contends that she suffered "severe, painful, permanent, and disabling injuries," including "severe headaches, cervical and thoracic strain, chest pains, post-traumatic stress disorder and permanent injuries, and other damages and losses to be shown at trial," because of the Accident, caused by the negligence of Nguyen.[7]

On February 3, 2022, after Plaintiff was granted leave to file a Supplemental and Amended Petition, which included a paragraph stating, "Plaintiff has incurred significant injuries as result of the [Accident] wherein her damages exceed $35,000, the jurisdictional limits of [City Court]," a City Court Judge granted Plaintiff's Motion to Transfer to District Court and transferred this matter to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[8] On February 28, 2022, Defendants removed this matter to this Court, on the basis of diversity subject matter jurisdiction under 28 U.S.C. § 1332.[9] After resolving several other issues through a series of video status conferences,[10] and as detailed in the Court's December 1, 2022 Status Conference Report and Order ("December 1 Order"), the Court required the parties to address the deficient allegations regarding amount in controversy in the Notice of Removal.[11]

In compliance with the December 1 Order, Defendants filed their Supplemental

---

[7] *Id.* at pp. 4-5, ¶¶ 5, 7-8.

[8] *See* R. Doc. 1-1, pp. 26-38.

[9] R. Doc. 1, at intro. and ¶ 10.

[10] This case has been fraught with substantive and procedural issues since removal, including the name of the proper party defendants, the citizenships of both Plaintiff and Nguyen, a prior motion to remand, two motions for leave to supplement and amend Plaintiff's Petition, an amended notice of removal, etc., all of which are discussed in greater detail in the relevant record documents. *See* R. Docs. 1, 4, 5, 8, 9, 10, 13, 14, 15, 17, 20, 22, 23, 25, 26, 27, 29, 31. During the course of several video status conferences, it became apparent that complete diversity exists now, and did at time of removal, because (1) Plaintiff is a citizen of El Salvador based on record evidence, while (2)(a) Nguyen is either a citizen of Michigan (as Defendants allege) or a citizen of Louisiana (as Plaintiff alleges); and (b) MemberSelect (which the parties agree is the proper party defendant) is a Michigan corporation with its principal place of business in Michigan. Although the issues surrounding the parties' citizenships were resolved through the conferences, the issue of whether the amount in controversy has been adequately established was not and is now the focus of this Report & Recommendation.

[11] R. Doc. 27. The Court raised the issue of whether the amount in controversy requirement is met in several conferences but deferred supplemental briefing on the issue until the December 1 conference and corresponding Order to resolve the citizenship issues first. *See, e.g.*, R. Doc. 25, p. 2; R. Doc. 26, pp. 1-2; & R. Doc. 27, pp. 2-6.

Memorandum in Support of Notice of Removal ("Memorandum").[12] In response, Plaintiff filed the instant Motion, contending, *inter alia*, that Defendants have failed to establish the amount in controversy requirement of 28 U.S.C. §1332.[13] Defendants oppose the Motion ("Opposition").[14]

## II.    LAW AND ANALYSIS

### A.    Legal Standard for Removal

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[15] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[16] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[17] The removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[18] The removing party has the burden of proving federal diversity jurisdiction.[19] Remand is proper if at any time the court lacks subject matter jurisdiction.[20] The Court has a duty to raise the issue of jurisdiction *sua sponte*.[21]

---

[12] R. Doc. 30.

[13] R. Doc. 32.

[14] R. Doc. 33.

[15] 28 U.S.C. § 1441(a).

[16] 28 U.S.C. § 1332(a)-(a)(1).

[17] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

[18] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). ("Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'"); *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008), quoting *In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

[19] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[20] *See* 28 U.S.C. § 1447(c).

[21] *Richard v. USAA Casualty Insurance Company,* No. 17-175, 2017 WL 8944429, at *1 (M.D. La. Nov. 30, 2017), citing *Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).

**B.    Defendants Have Failed to Establish that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs**

Louisiana law prohibits plaintiffs from specifying the amount of damages in their state court petitions.[22] When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving that the requisite amount in controversy is met.[23] The removing party may make this showing either: "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the facts in controversy— preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"[24] Once a removing defendant has established that the amount in controversy exceeds the federal jurisdictional amount, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[25]

Here, the Petition generally asserts that Plaintiff sustained "severe, painful and permanent" and "disabling" injuries, including "severe headaches, cervical and thoracic strain, chest pains, and post-traumatic stress disorder," because of the Accident.[26] In connection with these injuries, Plaintiff seeks damages for past, present, and future: (1) physical pain and suffering; (2) mental and emotional pain, anguish, and distress; (3) medical expenses; (4) loss of income and/or impairment of earning capacity; and (5) loss of enjoyment of life.[27] Plaintiff's generic injury allegations and demands for general categories of damages (*e.g.*, physical pain and suffering; mental and emotional pain, anguish, and distress; medical expenses; loss of income and/or impairment of earning capacity; and loss of enjoyment of life) are insufficient to establish the

---

[22] La. C.C.P. art. 893(A)(1); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[23] *Luckett*, 171 F.3d at 298, citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)).

[24] *Luckett*, 171 F.3d at 298, quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

[25] *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

[26] R. Doc. 1-1, pp. 4-5, ¶¶ 5, 8.

[27] R. Doc. 1-1, p. 5, ¶ 9.

amount in controversy.[28] The Court explained, in detail, why the amount in controversy is not facially apparent from the Petition based on these allegations.[29]

Since it was not facially apparent from the Petition that Plaintiff's damages likely exceed the federal jurisdictional amount, the Court also considered in the December 1 Order whether Defendants have met their burden of proving, through summary judgment-type evidence, that the amount in controversy is likely to exceed $75,000, exclusive of interest and costs.[30] The Notice of Removal, as amended, relies of the foregoing injury allegations, Plaintiff's failure to include an Article 893 statement in the Petition that her damages do not exceed the federal jurisdictional amount, and information about Plaintiff's injuries, diagnoses, and treatment contained in Plaintiff's City Court Motion to Transfer.[31] Specifically, Defendants allege that: (1) Plaintiff's Supplemental and Amending Petition in state court stated that "Plaintiff has incurred significant injuries as a result of the subject incident wherein her damages exceed, $35,000, the jurisdictional

---

[28] Even allegations of permanent disability, which is not alleged here, standing alone with no specification as to the affected body part(s), do not establish that a plaintiff's claims are likely to satisfy the amount in controversy requirement. *See Heaverlo v. Victoria's Secret Stores, LLC*, No. 07-7303, 2008 WL 425575, at *8 (E.D. La. Feb. 8, 2008) ("Although Mrs. Heaverlo alleges permanent disability, that allegation is not sufficient for the Court to retain this case. *In Palmer v. Wal–Mart Stores, Inc.,* No. Civ. A. 95–1723, 1996 WL 20862, at *1 (E.D. La. Jan. 17, 1996), the court granted plaintiff's motion to remand even when plaintiff alleged that she sustained severe and possibly permanent injuries, because her allegations were 'fairly 'vanilla'' and did not reveal the extent of her injuries. Mrs. Heaverlo's allegations are similarly commonplace. Given the accident described in the petition and the lack of evidence as to plaintiffs' likely damages, the Court finds that defendants have not satisfied their burden of showing by a preponderance of the evidence that more than $75,000 was in controversy at the time of removal.").
[29] *See* R. Doc. 27, pp. 2-3 & n. 12. *See also Broadway v. Wal-Mart Stores, Inc.*, No. 00-1893, 2000 WL 1560167, at *2 (E.D. La. Oct. 18, 2000), citing *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999); *Torres v. Mall of Louisiana, LLC*, No. 17-466, 2017 WL 6884347, at *3 (M.D. La. Dec. 5, 2017) ("While Plaintiff seeks several items of damages, there is no indication of the amount in controversy related to her alleged damages. Thus, it is not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000."); *Tucker v. Cincinnati Ins. Co.*, No. 17-414, 2017 WL 5762436, at *3 (M.D. La. Aug. 24, 2017) ("Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test."), quoting *Davis v. JK & T Wings, Inc.,* No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012).
[30] R. Doc. 27, pp. 4-6. *See also White v. FCI, USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (finding that, if it is not facially apparent, the court may rely on "summary judgment-type" evidence relevant to the amount in controversy at the time of removal to make the determination whether the requisite amount in controversy has been established). While "summary judgment-type evidence" can be considered in support of removal, counsel's arguments or statements in briefs are not "summary judgment-type evidence."
[31] R. Doc. 15, ¶¶ 11-16. *See also* Motion to Transfer, R. Doc. 1-1, at pp. 26-38.

limits of [Baton Rouge City Court]" and sought transfer of her case to the Nineteenth Judicial District Court; (2) that Plaintiff began treating with Total Care Injury & Pain Center after the collision, complaining of intermittent, left shoulder pain, which was dull but increased while laying down, and intermittent, low back pain, which "pinch[ed] and radiat[ed] into her left knee"; (3) that due to "continued pain," Plaintiff underwent a lumbar MRI, which "indicated a L4-L5 disc bulge and focal right lateral annular fissure with bilateral foraminal narrowing as well as L5-S1 broad-based posterior central 3.3 mm disc herniation and annular fissure with abutment of the right S1 nerve root"; (4) that given Plaintiff's "ongoing pain nearly one year post accident," she began seeing Dr. Turnipseed at Baton Rouge Diagnostic Pain and Treatment Center on November 17, 2021, where she was recommended for and underwent a lumbar epidural steroid injection ("ESI"); and (5) that as of January 28, 2022, Plaintiff's "medical expenses are nearly $20,000," including the cost of the ESI, and Plaintiff "is likely to have future medical care which further increases her damages."[32] Again, the Court explained, in detail, in its December 1 Order why this information was insufficient to carry Defendants' burden of establishing the amount in controversy through summary judgment-type evidence.[33]

Following the December 1 Order, Defendants filed the Memorandum and Opposition, which advance the same arguments and rely on the set of medical records, discovery responses, and pre- and post-removal settlement demands.[34] While these documents are summary judgment-type evidence bearing on the amount in controversy, they do no more than provide evidentiary

---

[32] R. Doc. 15, ¶¶ 11-16. *See also* Motion to Transfer, R. Doc. 1-1, at pp. 26-38.

[33] R. Doc. 27, pp. 4-6 & ns. 15, 17, 19, 21.

[34] *See* R. Doc. 30-1 (35 pages of medical and billing records); R. Doc. 30-2 (Plaintiff's Responses to Defendants' First Set of Interrogatories and Requests for Production of Documents Propounded); R. Doc. 30-3 (Plaintiff's demand letters to Defendants dated June 15, 2021 and September 30, 2021, respectively, and Plaintiff's letter withdrawing those demands dated January 27, 2022); R. Doc. 33-1 (Defendants' Second Set of Interrogatories, Requests for Production of Documents and Requests for Admission to Plaintiff, to which Plaintiff had not responded); R. Doc. 33-2 (Plaintiff's post-removal demand letter to Defendants, dated November 15, 2022); and R. Doc. 33-3 (insurance coverage information for Nguyen).

support for the allegations contained in the Amended Notice of Removal, which the Court already explained were insufficient to establish the amount in controversy.[35] The Memorandum and Opposition contain little new information about Plaintiff's injuries and damages other than (1) that she is claiming $364 in lost wages,[36] (2) that she is claiming $1,319.40 in property damages,[37] and (3) that as of November 15, 2022, she has incurred $21,100 in medical expenses over the course of about 15 months following the Accident.[38] However, while relevant, these amounts are not significant enough alone, or combined, to show that Plaintiff's claims likely exceed the jurisdictional threshold for the reasons explained in the December 1 Order and below.[39]

All told, the injuries Plaintiff relates to the Accident appear to be back pain, including a disc bulge and a 3.3 mm disc herniation. For these injuries, Plaintiff has treated for about 15 months, undergone two ESIs, and, according to her counsel, was mostly recovered at least by about two years post-Accident.[40] Plaintiff's incurred medical expenses are under $22,000 (and incurred medical expenses, lost wages, and property damage total less than $23,000 combined). Further, Plaintiff's medical records—and the record as a whole—contain little information about Plaintiff's prognosis or any recommended future treatment, considering the last of treatment of record

---

[35] *See* R. Doc. 27, pp. 4-5 (explaining that statements of counsel in the Amended Notice of Removal and/or Motion to Transfer are not summary judgment-type evidence and that the documents from which the statements came were not attached to the Amended Notice of Removal, but noting that, "[r]egardless, these allegations are insufficient to establish that Plaintiff's claims likely exceed $75,000, exclusive of interest and costs.").

[36] R. Doc. 30-2, p. 9, at Answer to Interrogatory No. 16 (stating, "Total Lost Wages: $364.00").

[37] R. Doc. 30-2, p. 15 ($1,319.40 repair estimate from Centurion Car Care Paint & Body).

[38] *See* R. Doc. 33-2. It is unclear from the evidence in the record how long Plaintiff's treatment lasted, considering (1) that the Accident occurred on November 21, 2020, (2) that, according to evidence in the record, Plaintiff's last date of treatment was February 17, 2022 (*see* R. Doc. 30-1, pp. 29-30), notwithstanding (a) the statement in Plaintiff's November 15, 2022 demand that her treatment continued to "present" (*see* R. Doc. 33-2, p. 3), and (b) the statement by Plaintiff's counsel in the November 3, 2022 conference that "Plaintiff has undergone two [ESIs] and is close to the end of her recovery" (*see* R. Doc. 26, p. 2). However, considering that the last date of treatment supported by the record is February 17, 2022, the Court will use "about 15 months" (November 21, 2020 to February 17, 2022) to describe the duration of Plaintiff's treatment.

[39] *See* R. Doc. 27, pp. 4-6 & ns. 19, 21.

[40] R. Doc. 26, p. 2.

supported by summary judgment-type evidence was on February 17, 2022—shortly before the case was removed to this Court.[41]

Without any specific information about Plaintiff's recommended future treatment (other than an unsupported statement in the Memorandum *by Defendants' counsel* that "it is likely [Plaintiff] will seek additional treatment"), and particularly considering Plaintiff's counsel's statement to the Court that Plaintiff was nearing the end of her treatment, Plaintiff's injuries and treatment, even as documented in the summary judgment-type evidence submitted in support of removal, are not of the severity required to establish that her damages likely meet the jurisdictional threshold, particularly considering that Plaintiff's documented past medical expenses for 15 months of treatment amount to only $21,100.[42] There is ample authority from this Court and others in this Circuit, that removing defendants failed to establish the jurisdictional threshold when alleging similar injuries, treatment, and medical expenses.[43] At best, the cases cited by Defendants

---

[41] *See* R. Doc. 33-2, at p. 3. Although Plaintiff's November 15, 2022 settlement demand indicates that Plaintiff's treatment with Spine Diagnostic Pain & Treatment Center began on November 17, 2021 and continues to "present," Plaintiff's last record of treatment with Spine Diagnostic Pain & Treatment Center, according to the summary judgment type-evidence before the Court, occurred on February 17, 2022 (the date of Plaintiff's second ESI), some nine months before the November 15 settlement demand. R. Doc. 30-1, pp. 29-30.

[42] R. Doc. 33-2, p. 3.

[43] *See, e.g., Snearl v. Crete Carrier Corp.* No. 21-266, 2021 WL 5817453 (M.D. La. Nov. 22, 2021), report and recommendation adopted, 2021 WL 5811966 (Dec. 7, 2021) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations; information in plaintiff's medical records, including that she "suffered, and continues to suffer from, neck and back pain, with radicular right leg pain; that she has undergone injections to her lumbar spine, including an epidural steroid injection and two medial branch blocks; and that she has received at least one lumbar radiofrequency ablation"; and incurred medical expenses totaling $28,281.20 over the course of more than one year of treatment with an orthopedic spine surgeon and pain management physician); *Johnson v. Petsmart, Inc.*, No. 16-3448, 2017 WL 360265 (E.D. La. Jan. 25, 2017) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations, including that he suffered injuries to his neck, back, head, and other body parts as a result of a slip and fall; incurred medical expenses totaling "almost $20,000," which does not include EMS bills, pharmacy bills, or specialist provider bills; and plaintiff's failure to stipulate that his damages do not exceed $75,000); *Witchen v. Churchill Downs, Inc.*, No. 16-12356, 2016 WL 4751794 (E.D. La. Sept. 12, 2016) (remanding case to state court for failure to establish amount in controversy despite defendant's argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, because of plaintiff's injury and damages allegations; information in plaintiff's medical records and discovery responses showing that she suffered a broken femur and fractured hip, underwent surgery at the emergency room, was hospitalized for fifteen days, experienced and treated for complications arising from the surgery, treated with physical and occupational

where general damages awards for disc bulges and/or herniations exceeded $60,000[44] are indicative of what *could* be awarded to Plaintiff, but are not sufficient to establish that such an award is more likely than not. While the damage awards in those cases exceed $75,000, those cases are also not persuasive at this stage of the litigation, as there cannot be a meaningful comparison of this case to any of those cases for the purposes of determining whether the jurisdictional threshold is met because the relevant information regarding Plaintiff's injuries and damages is largely unknown.[45] "[A] simple recitation of cases where plaintiffs have been awarded damages that would exceed the federal jurisdictional amount are not sufficient to establish the amount in controversy." Rather, Defendants "must point to facts **in this case** that establish that the actual amount in controversy exceeded $75,000,"[46] and they have not done so.[47]

Next, Defendants argue that "Plaintiff's initial pre-removal settlement demand, subsequent

therapists, and incurred "at least $22,998.08 in medical expenses"; and plaintiff's failure to stipulate that her damages do not exceed $75,000 and failure to include an Article 893 statement in her petition); *Aldrich v. DBP Holding Corp.*, No. 13-5729, 2014 WL 2215707 (E.D. La. May 28, 2014) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations; incurred "medical expenses total[ing] in excess of $20,000" at the time of removal, a "quantum study of seven allegedly similar cases in which general damages ranged from $50,000 to $150,000"; plaintiff's failure to stipulate that her damages did not exceed $75,000; and an e-mail from plaintiff's counsel stating that the amount in controversy is "greater than 75000 [sic].").

[44] R. Doc. 30, pp. 4-6.

[45] *See Silva v. Hartford Ins. Co. of the Midwest*, No. 15-5844, 2016 WL 4501288, at *5 (E.D. La. Aug. 29, 2016) ("Overall, Defendant's argument that the amount in controversy is satisfied by citing two Louisiana state court cases with highly individualized facts different from the facts at issue here is unconvincing. Because the fact finder has discretion in determining an appropriate amount of damages based upon the facts of each individual case, monetary awards in previous cases are not sufficient to meet Defendant's burden of establishing that the amount of controversy here is greater than $75,000. The Defendant must point to facts in this case that establish that the actual amount in controversy exceeded $75,000. Moreover, the damages awards cited by Defendant are based on the entire record after trial, whereas subject matter jurisdiction determinations must only be based on the jurisdictional facts that exist at the time of removal. This point is especially salient when the Plaintiff's particular alleged injury cannot be broadly generalized and compared across different plaintiffs with 'similar' injuries, and when such an injury can result in widely ranging damages awards that do not always satisfy the amount in controversy requirement.").

[46] *Id.* (emphasis added).

[47] Plaintiff's failure to include a La. Code Civ. P art. 893 allegation in her Petition that her damages do not exceed $75,000 is also not sufficient to establish the amount in controversy. There is ample authority from this Court and others within this Circuit holding that, while the failure to include an Article 893 is entitled to some consideration, it is not dispositive of the amount in controversy. In any case, even affording some weight to Plaintiff's failure to include an Article 893 allegation in her Petition, that action (or inaction) is not enough to sustain Defendants' burden, in light of the low amount of Plaintiff's medical expenses at the time of removal for about 15 months of conservative treatment, including two ESIs but no surgical recommendation, with no evidence of the extent or cost of future treatment, if any, and less than $2,000 in lost wages and property damage.

withdrawal of a lower demand, and post-removal 'policy-limits' settlement demand supports the amount in controversy was met at the time of removal."[48] The series of settlement-related events relied on can be summarized as follows: In June 2021, in an "attempt at an early resolution…and prior to embarking on full-fledged litigation," Plaintiff demanded the "policy limits of the liability coverage, plus court costs and judicial interest" related to the injuries she claims she sustained in the Accident.[49] Although Defendants' response is not in the record, Defendants apparently countered Plaintiff's offer with $1,500, to which Plaintiff responded on September 30, 2021, demanding $35,000—*i.e.*, the jurisdictional limit of City Court where Plaintiff's claims were pending at that time.[50] About a month before removal, Plaintiff "withdr[ew] any and all offers [that had] been previously provided" because Plaintiff has "significant injuries and is receiving recommendations for future care."[51] After removal (and, curiously, after the Motion was filed), Plaintiff again demanded "policy limits" from Defendants.[52] Defendants argue that Plaintiff's "post-removal policy limit demand is well in excess of the jurisdictional threshold and further supports that Plaintiff values her claim to be wore more than $75,000.00."[53]

While Defendants make much to do about these "policy limits" demands, it is not clear from these demands that either Plaintiff or her counsel knew the limits of the policy at issue when making the "policy-limits" demands, and the demands are not for a specific amount in excess of

---

[48] R. Doc. 30, pp. 6-7 (cleaned up). *See also* R. Doc. 33, pp. 3-4.

[49] R. Doc. 30-3, pp. 1-2 (noting (1) that Plaintiff "injured her lumbar spine including a L4-L5 disc bulge and focal right lateral annular fissure with bilateral foraminal narrowing as well as a L5-S1 broad based posterior central 3.3 mm disc herniation and annular fissure with abutment of the right S1 nerve root," and (2) that Plaintiff's incurred medical expenses at that time were $6,810," and citing two Louisiana quantum cases for the proposition that general damages award for herniations range from $30,000 to $70,000).

[50] R. Doc. 30-3, pp. 3-5 (demanding $35,000 but explaining that Plaintiff "may have a $50,000 case but be limited to the recovery of $35,000 due to a jurisdictional issue.").

[51] R. Doc. 30-3, p. 6.

[52] R. Doc. 33-2 (reiterating Plaintiff's injuries and what Plaintiff believes is the applicable quantum, noting (1) that Plaintiff has undergone two lumbar epidural steroid injections ("ESI") on December 21, 2021 and on February 17, 2022; (2) that Plaintiff's incurred medical expenses as of November 15, 2022 total $21,100, and demanding "policy limits, plus court costs.").

[53] R. Doc. 30, p. 9. *See also* R. Doc. 33, pp. 3-4 (arguing that "it is evident by both of Plaintiff's demand of policy limits ($250,000.00) that she assesses her claim at a value well over the jurisdictional minimum.").

jurisdictional threshold.[54] While Defendants are correct that this court has previously said a settlement demand can be considered relevant evidence of amount in controversy when the settlement offer reflects an honest assessment of the value of the plaintiff's claims,[55] it is difficult to conclude that a "policy limits" demand is an honest assessment of value when it is not clear from the record that the policy limits are known. Contrary to Defendants argument that Plaintiff is demanding "well in excess of the jurisdictional threshold," Plaintiff's pre- and post-removal demands for "policy limits" are—at most—demands for MemberSelect's insured's policy limits, whatever those limits may be, based on Plaintiff's counsel's assessment of quantum informed by general damage awards in two Louisiana state court involving bulging and/or herniated discs.[56] However, Plaintiff's counsel also admitted in those demands that "Louisiana quantum varies regarding herniations, depending on the course of treatment and severity of the herniation."[57] As explained above, Defendants have not established in this case that Plaintiff's injuries and treatment are of the severity and/or duration required to show that her damages likely meet the jurisdictional threshold.

Lastly, Defendants note that they propounded a "targeted second set of discovery requests…seeking additional information regarding the nature and precise valuation of Plaintiff's

---

[54] *See* R. Doc. 30-3, pp. 1-2, & R. Doc. 33-2, pp. 1-3. Indeed, beyond Defendants' counsel's conclusory statement in the Memorandum that "Plaintiff is aware" that the "MemberSelect policy implicated here has a bodily injury policy limit of $250,000.00," there is no summary judgment-type evidence in the record showing when Plaintiff or her counsel became aware of what the policy limits were or, more importantly, that Plaintiff or her counsel were, in fact, aware of those limits at the time either "policy limit" demand was made. *See* R. Doc. 30, p. 7.

[55] R. Doc. 30, p. 7, citing *Leonard v. Sentry Select Ins. Co.*, No. 15-675, 2016 WL 1393382, at *3 (M.D. La. Mar. 11, 2016, report and recommendation adopted, No. 15-675, 2016 WL 1369397 (M.D. La. Apr. 6, 2016).

[56] *See* R. Doc. 30-3, pp. 1-2, & R. Doc. 33-2, discussing *McKnight v. McCastle*, 2004-2437 (La. App. 1 Cir. 12/22/05), 928 So.2d 45 (affirming district court's award of $30,000 in general damages to plaintiff who sustained injuries during a trip and fall, including lumbar radiculopathy secondary to L5-S1 disc herniation with nerve root impingement on the left S1 nerve root, and treated conservatively with several doctors over the course of less than four months, but reducing lost wages award from $7,014.00 to $4,676.00), and *Zimmerman v. Progressive Sec. Ins. Co.*, 49,982 (La. App. 2 Cir. 8/12/15), 174 So.3d 1230 (affirming $70,000 general damage award to plaintiff, who sustained various physical and mental injuries, including injuries to her fact, eye, back, knee, and leg, a "minimal disk bulge at C5-6, depression, and post-traumatic stress disorder, as a result of an intentional car collision and treated conservatively with several doctors over about five months, despite noting that this award was "high" but "not excessive").

[57] *See, e.g.*, R. Doc. 30-3, p. 3.

claims, injuries, prospective medical treatment and whether Plaintiff's damages exceed this court's jurisdictional limit," and that Plaintiff has not provided responses "to date."[58] This is not sufficient to carry Defendants' burden because, as one court noted, "[i]f the removing defendant does not have facts sufficient to support removal when the original petition is received, it is the removing defendant's responsibility to discover those facts *before* effecting removal. That is precisely why the 'other paper' removal rule exists, to ensure that removals will not be filed 'before their factual basis can be proven [by the removing defendant] by a preponderance of the evidence.'"[59] Likewise, Plaintiff's failure to respond to Defendants' inquiry as to whether Plaintiff "would stipulate that damages in this case are less than $75,000"[60] is also not sufficient, as this Court has consistently found that a plaintiff's refusal to stipulate that damages do not likely exceed $75,000 is not enough to establish amount in controversy.[61]

The amount in controversy is not facially apparent from the Petition, and, despite the summary judgment-type evidence submitted with the Memorandum and Opposition, Defendants have not met their burden of proving by a preponderance of the evidence that the amount in

---

[58] *See* R. Doc. 33, p. 1, n. 2.

[59] *Bonvillian v. National Liability & Fire Ins. Co.*, No. 16-1708, 2017 WL 892311, at *3 (W.D. La. Feb. 1, 2017), quoting *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002)). Similarly, to the extent Defendants are arguing that Plaintiff's failure to respond to their discovery requests results in a "deemed admission" from Plaintiff that her claims exceed the jurisdictional threshold, the Court has addressed, and rejected, that argument before. *See, e.g.*, *Corceone v. Garing*, No. 23-1, 2023 WL 2899273, at *6 (M.D. La. Apr. 11, 2023); *DeJean v. Mars Wrigley Confectionary*, No. 20-623, 2020 WL 5900137, at *2 (M.D. La. Oct. 15, 2020); *Harrison v. Ace American Ins. Co.*, No. 21-245, 2021 WL 6331969, at *3 (M.D. La. Dec. 14, 2021).

[60] *See* R. Doc. 33, p. 1, n. 2.

[61] *See, e.g., McClay v. DG Louisiana, LLC*, No. 20-59, 2021 WL 3237313, at *9 (M.D. La. June 11, 2021) ("Finally, while Plaintiff refused to enter into the stipulation proffered by Defendant that her damages were less than $75,000, that information alone is not enough to establish the jurisdictional minimum."); *Shelton v. Hallmark Trucking Ins. Co.*, No. 17-1683, 2018 WL 1998341, at *3 (M.D. La. Mar. 27, 2018), report and recommendation adopted, *Shelton v. Hallmark Specialty Ins. Co.*, No. 17-1683, 2018 WL 1997543 (M.D. La. Apr. 27, 2018) ("This court has previously explained that the failure to execute a stipulation is but one factor for the court to consider in its amount in controversy analysis."); *Cage v. Hobby Lobby Stores, Inc.*, No. 14-58, 2015 WL 803120, at * 4 (M.D. La. Feb. 25, 2015) (explaining that court "may consider the Plaintiff's refusal to sign the stipulation [that the amount in controversy was less than $75,000] as a factor in determining whether Defendant has met its burden of proof.") (citing *Lipford v. Boehringer Ingelheim Pharm., Inc.*, No. 13-2858, 2014 WL 458359, at * 5 (W.D. La. Feb. 4, 2014)).

controversy likely exceeds $75,000, exclusive of interest and costs.[62] Because this Court is required to presume that it lacks subject matter jurisdiction,[63] any doubt as the existence of subject matter jurisdiction is resolved in favor of remand.[64] Accordingly, it is recommended that the Motion be granted, and that this matter be remanded to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[65]

## III.   RECOMMENDATION

The evidence submitted by Defendants in this case in support of subject matter jurisdiction shows that Plaintiff has undergone only conservative treatment, including 2 ESIs, over the course of about 15 months after the Accident, with no evidence of treatment after February 17, 2022, and medical expenses incurred, lost wages, and property damage totaling less than $23,000 combined. Similarly, the settlement-related correspondence between the parties, including two "policy limits" demands that do not state the policy limits or give any indication that Plaintiff was aware of what those limits were, and the cases on which Defendants rely to establish the amount in controversy are unpersuasive. Under these facts, Defendants have not born their burden to establish the Court's subject matter jurisdiction, specifically that Plaintiff's claims *likely* exceed $75,000, exclusive of interest and costs.

---

[62] "Because Defendant[s] ha[ve] not shown by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional amount, the Court has no need to consider whether Plaintiffs can show to a legal certainty that they will not be able to recover in excess of that amount." *Medina v. Allstate Vehicle and Property Insurance Company,* 458 F. Supp. 3d 591, 601 (W.D. Tex. May 1, 2020).

[63] *Edwards v. Jackson Hinds Comprehensive Health Center,* No. 17-972, 2018 WL 3653761 (S.D. Miss. June 11, 2018), at *1, quoting *Nixon v. Goldman Sachs Mortg. Corp.,* No. 16-597, 2016 WL 3763425, at **2–3 (N.D. Tex. July 14, 2016) (citing 28 U.S.C. §§ 1331, 1332); *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994).

[64] *Gasch,* 491 F.3d at 281-82. *See also Manguno,* 276 F.3d at 723 ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").

[65] Plaintiff's claims in this case assert violations of state law; therefore, this Court does not have federal question jurisdiction pursuant to 28 U.S.C. § 1331.

As doubts about the propriety of removal are resolved in favor of remand, it is **RECOMMENDED** that the Motion to Remand,[66] filed by Plaintiff Marina Peña-Nevarro, be **GRANTED,** and that this matter be **REMANDED** to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana for lack of subject matter jurisdiction.

Signed in Baton Rouge, Louisiana, August 28, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[66] R. Doc. 32.

14